*192 OPINION OF THE COURT
Lucy Billings, J.
This action seeks damages for alleged fraud and malpractice arising from defendant’s representation of plaintiff in his grievance proceedings before the National Labor Relations Board (NLRB). Defendant has moved for summary judgment dismissing the complaint. For the reasons discussed below, the court grants the motion.
I. The Undisputed Facts
The following material facts are conceded or are supported by admissible evidence, uncontroverted, and therefore treated as conceded. (Kuehne & Nagel v Baiden, 36 NY2d 539, 544 [1975]; Costello Assocs. v Standard Metals Corp., 99 AD2d 227, 229 [1st Dept 1984]; Schneider Fuel Oil v DeGennaro, 238 AD2d 495, 496 [2d Dept 1997].)
In January 1991, Eagle Electric Manufacturing Company laid off plaintiff and other members of his union. Plaintiff filed a grievance pursuant to his collective bargaining agreement. On February 1, 1991, Eagle rejected the grievance as merit-less. On February 22, 1991, the union, represented by Eisner, Levy, Pollack and Ratner, P. C., filed a grievance on behalf of the class of laid-off workers and demanded arbitration before the NLRB. The NLRB held arbitration hearings on this grievance extending through April 1992. On February 12, 1992, Eagle recalled plaintiff, ending his layoff.
On May 29, 1992, Eagle fired plaintiff for reasons unrelated to the prior grievance. The union, still represented by the Eisner firm, filed a grievance against the termination. Hearings on the layoff grievance continued. The first hearing on plaintiff’s termination grievance was held in May 1993.
In September 1993, K. Dean Hubbard joined the Eisner firm, then constituted as Eisner, Goldfeder & Hubbard, P. C., but continuing as union counsel. On November 5, 1993, the union president notified the NLRB that several grievances had been settled and requested they be withdrawn from arbitration “without prejudice.” (Affidavit of Tadeusz Niezbecki [Niezbecki affidavit], exhibit B; affidavit of K. Dean Hubbard [Hubbard affidavit], exhibit C.) Among the withdrawn grievances was the class grievance arising from the January 1991 layoffs. A copy of the letter was directed to Mr. Hubbard.
Plaintiff insists that the grievance was not settled and that the union sent the letter “without prior consultation” with him. (Niezbecki affidavit 25.) Defendant does not deny that the *193 layoff grievance was withdrawn from arbitration without plaintiff’s knowledge or consent; defendant maintains it was unaware of plaintiff’s status as a member of the class of grievants in that proceeding. Defendant further concedes that upon receipt of the union president’s letter of November 5, 1993, defendant took no action regarding the grievances presented as settled and withdrawn. In a letter to union counsel dated November 8, 1993, the American Arbitration Association (AAA) acknowledged receipt of the union president’s letter, canceled further proceedings in the layoff grievance, and stated that unless otherwise advised, “within seven days,” the AAA would “consider the matter settled.” (Niezbecki affidavit, exhibit C.)
Defendant learned of plaintiff’s participation in the layoff grievance and his desire to pursue the matter while preparing for a February 1994 hearing on plaintiff’s termination grievance. On February 28, 1994, Mr. Hubbard wrote the AAA that “the Union had erroneously included [the layoff grievance] in a list of cases to be withdrawn without prejudice” and asked that the case be restored for arbitration. (Niezbecki affidavit, exhibit D; Hubbard affidavit, exhibit D.) Eagle opposed, claiming that because the AAA, at the union’s request, had considered the matter settled: “The arbitrator and the AAA no longer have jurisdiction over this matter.” (Niezbecki affidavit, exhibit E.) On October 3, 1994, the AAA “determined that this is an issue as to arbitrability which could be determined by an arbitrator.” (Id., exhibit F [a]; Hubbard affidavit, exhibit E.)
Following several hearings, the arbitrator on January 9, 1995 rejected plaintiff’s termination grievance. Plaintiff then filed a complaint with the NLRB in April 1996, claiming unfair labor practices. (29 USC § 158 [b] [1] [A].) He alleged specifically that the union “failed and refused to represent [him] regarding his 1991 layoff and 1992 discharge * * * for reasons that are arbitrary, capricious and invidious.” (Hubbard affidavit, exhibit H.) On October 30, 1996, the NLRB found the union did not unlawfully fail to represent plaintiff regarding his 1991 layoff or 1992 discharge. After a hearing on the arbitrability of the layoff grievance, the AAA on December 9, 1996, rejecting the union’s claim that the layoff grievance was withdrawn inadvertently, concluded it could not be reinstated and was unarbitrable.
II. This Action
On July 16, 1998, plaintiff filed his complaint in this action, alleging: “Failure to provide proper services. Mr. D. Hubbard was union councel [sic] during all time in American Arbitra *194 tion Association for two cases. He lied that he did not know about union decision to withdraw my case, and that is why I lost my two cases.” On August 20, 1998, defendant filed a notice of removal to the United States District Court for the Southern District of New York (28 USC §§ 1441, 1446), claiming plaintiffs action “is completely preempted” by. Federal law. (Hubbard affidavit, exhibit R, at 3.) On March 15, 1999, the Federal court determined that because the preemption by Federal law is raised only as a defense, and the complaint is not based on any Federal law, the complaint fails to state a Federal claim, requiring remand to State court. (28 USC § 1447 [c].) Defendant now moves in this court for summary judgment dismissing the complaint on the grounds that (1) it fails to state a cause of action, (2) the claims are time barred, and (3) they are preempted by Federal law, which immunizes defendant from relief.
III. The Claim
Although plaintiff fails to state any claim concerning the termination grievance, he does articulate a claim for malpractice as to the layoff grievance. Any fraud or misrepresentation, assuming it to be adequately pleaded, is a basis of the alleged malpractice. (CPLR 3013, 3016 [b]; see, CCA 902 [a]; 903; 22 NYCRR 208.7 [a].) Plaintiff alleges he lost his layoff grievance because the union withdrew the grievance, and the attorney, whether he knew about the withdrawal or not, allowed it to occur; did not inform plaintiff; and did not seek to rectify it until months later. Mr. Hubbard’s obligation to communicate candidly with a client about his case was well within the scope of the attorney’s professional responsibility to the client. (See, e.g., Allis-Chalmers Corp. v Lueck, 471 US 202, 216-218 [1985]; Dougherty v American Tel. & Tel. Co., 902 F2d 201, 204 [2d Cir 1990].)
Although plaintiff alleges no facts on which to assess the merits of the layoff grievance, defendant does not contend that the grievance lacked merit or that the union withdrew the grievance with plaintiffs consent or knowledge. Defendant’s admissions, by themselves, raise material issues as to whether the firm, as counsel for the union, negligently included plaintiffs layoff grievance in the list of grievances withdrawn by the union in its letter of November 5, 1993, or failed to review and object to the inclusion of plaintiffs grievance in the list, which had been forwarded to defendant.
IV. Preemption
The United States District Court’s decision, which is not appealable, that the defense of Federal preemption of plaintiffs *195 malpractice claim did not state a Federal claim, leaves this court to determine whether plaintiff has alleged a malpractice claim under State law that is not preempted. (28 USC § 1447 [d]; see, Martin v City of Cohoes, 37 NY2d 162, 165 [1975]; Post v Post, 141 AD2d 518, 519 [2d Dept 1988]; Forbush v Forbush, 115 AD2d 335, 336 [4th Dept 1985]; see also, People v Trans World Airlines, 171 AD2d 76, 83 [1st Dept 1991]; Freer v Mayer, 223 AD2d 667, 667-668 [2d Dept 1996]; Meneely v Hitachi Seiki USA, 175 AD2d 111, 112-113 [2d Dept 1991].) The Federal District Court’s decision relied on the absence of any express determination by the Second Circuit Court of Appeals that malpractice claims based on State law, against attorneys acting as agents for a union in grievance proceedings arising from a collective bargaining agreement, are completely preempted by Federal law. (Niezbecki v Eisner & Hubbard, 1999 WL 144513, *2, 1999 US Dist LEXIS 2970, *6 [SD NY, Mar. 16, 1999, Baer, J.].) As that decision recognizes, a claim that is not completely preempted still may be preempted.
The “well-pleaded complaint rule” ordinarily confers Federal jurisdiction only when a complaint on its face, unlike the complaint here, presents a Federal claim. (Caterpillar Inc. v Williams, 482 US 386, 392-393, 398-399 [1987].) The complete preemption doctrine applies when a statute’s preemptive force is so extraordinary that it “converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.” (Metropolitan Life Ins. Co. v Taylor, 481 US, 58, 65 [1987]; see, Caterpillar Inc. v Williams, 482 US, at 392-393, 398-399.) Preemption, rather than transforming a claim under State law into a claim under Federal law, simply applies Federal law to the pleading. (Caterpillar Inc. v Williams, 482 US, at 391, 397-398; Allis-Chalmers Corp. v Lueck, 471 US, supra, at 209-210.) The Federal District Court only decided that plaintiffs claim was not completely preempted by Federal law for purposes of conferring Federal jurisdiction. That court did not decide whether his claim was preempted by Federal law in the State court.
Moreover, since the Federal District Court’s decision, the Second Circuit has ruled further that Federal law preempts a claim for legal malpractice on State law grounds against attorneys representing union members in grievance proceedings arising from a collective bargaining agreement. (Waterman v Transport Workers’ Union Local 100, 176 F3d 150 [2d Cir 1999]; see, Atkinson v Sinclair Ref. Co., 370 US 238, 248-249 *196 [1962].) In light of Waterman, whether or not its holding amounts to complete preemption, the court now must determine whether plaintiffs claim of professional malpractice and misrepresentation by counsel, hired by the union to represent members in grievance proceedings, is grounded on the collective bargaining agreement and therefore preempted by Federal law. (Frontier Pilots Litig. Steering Comm. v Cohen, Weiss & Simon, 227 AD2d 130, 131 [1st Dept 1996]; see, Best v Rome, 858 F Supp 271, 274-275 [D Mass 1994].)
While plaintiffs attempt to frame his complaint in State law is not dispositive of the preemption question (id.), neither does Federal law preempt “every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement.” (Allis-Chalmers Corp. v Lueck, 471 US, supra, at 211.) Preemption is required “when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.” (Id., at 220; accord, Lingle v Norge Div., Magic Chef, 486 US 399, 405-406 [1988]; Caterpillar Inc. v Williams, 482 US, supra, at 394; Cruz v Presbyterian Hosp., NYLJ, Sept. 20, 1999, at 38, col 3, 1999 WL 1011966, 1999 US Dist LEXIS 16526 [ED NY, Sept. 13, 1999, Dearie, J.].)
Plaintiffs theory, whether of malpractice or of fraud, is independent of the collective bargaining agreement only to the extent that defendant’s conduct deprived him of a determination on the merits of his claim under the agreement’s grievance procedures. Under this view, the terms of the bargaining agreement governed only whether the grievance was arbitrable. But for defendant’s conduct, whether constituting malpractice or fraud, plaintiffs claim regarding an illegal layoff would have been arbitrable.
Even construing plaintiffs theory in the light most favorable to him, his loss of arbitration rights owing to defendant’s alleged conduct is not entirely independent of the collective bargaining agreement. (Waterman v Transport Workers’ Union Local 100, 176 F3d 150, supra; Dougherty v American Tel. & Tel. Co., 902 F2d, supra, at 204.) Grievance procedures constitute an essential part of the collective bargaining process. (E.g., Breda v Scott, 1 F3d 908, 909 [9th Cir 1993]; Best v Rome, 858 F Supp, supra, at 274, n 3.)
Moreover, to prevail on the merits, plaintiff must demonstrate that defendant’s malpractice or fraud barred a claim that was both meritorious and amenable to resolution through the grievance process established by the collective bargaining *197 agreement. (Kerson Co. v Shayne, Dachs, Weiss, Kolbrenner, Levy & Levine, 45 NY2d 730, 732 [1978].) To prevail on a malpractice theory, he also must demonstrate that the union’s withdrawal of his grievance substantially deviated from the procedures and standards for representing union members in the grievance process. (Gray v Wallman & Kramer, 184 AD2d 409, 413 [1st Dept 1992]; Lavin & Kleiman v Heinike Assocs., 221 AD2d 919 [4th Dept 1995]; Zeitlin v Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, 209 AD2d 510 [2d Dept 1994]; L.I.C. Commercial Corp. v Rosenthal, 202 AD 2d 644, 644-645 [2d Dept 1994].) Claims of fraud or negligent misrepresentation also would be measured by the standards of conduct and. responsibility imposed on attorneys in their practice. These determinations cannot be made without resort to the terms of the bargaining agreement. (E.g., Dougherty v American Tel. & Tel. Co., 902 F2d, supra, at 204; Schuver v MidAmerican Energy Co., 154 F3d 795, 799 [8th Cir 1998].) However framed, in contract or tort, plaintiffs cause of action is preempted by Federal law. (Atkinson v Sinclair Ref. Co., 370 US, supra, at 249; Frontier Pilots Litig. Steering Comm. v Cohen, Weiss & Simon, 227 AD2d, supra, at 131.)
V. Immunity
A consequence of preemption, where rights and obligations under the pertinent collective bargaining agreement are inextricably involved in a claim under State law, is that union counsel are immune from suit under Federal law. (29 USC § 185 [b]; Arnold v Air Midwest, 100 F3d 857, 862-863 [10th Cir 1996]; Montplaisir v Leighton, 875 F2d 1, 4, 6 [1st Cir 1989]; Peterson v Kennedy, 771 F2d 1244, 1258-1259 [9th Cir 1985]; see, Dougherty v American Tel. & Tel. Co., 902 F2d, supra, at 203-204.) “[W]hen the union is providing the services, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member.” (Peterson v Kennedy, 771 F2d, at 1258.) This doctrine flows from the union’s duty to fairly represent its membership. While the union may provide legal services by employing in-house counsel or hiring an outside attorney for a specific proceeding, no attorney-client relationship between counsel and members results. (Arnold v Air Midwest, 100 F3d, at 862-863; Peterson v Kennedy, 771 F2d, at 1258; Brown v Maine State Empls. Assn., 690 A2d 956, 959-960 [Me 1997].) Without this relationship between defendant and plaintiff, even if Federal preemption did not mandate defendant’s immunity from suit, a fundamental element of a malpractice claim under State law is absent.
*198 VI. Negligence and Breach of the Duty of Fair Representation
For purposes of this motion, the court considers that plaintiff has satisfactorily pleaded that (1) defendant failed either to properly determine plaintiffs interest and objectives in pursuing the layoff grievance, before the union withdrew his grievance, or to review the list of grievances to be withdrawn for unsettled, viable claims, and (2) defendant’s failure proximately caused the dismissal of plaintiffs layoff grievance. A well-pleaded malpractice claim under State law is grounded on negligence. (Parker Duryee Rosoff & Haft v Ariss, 250 AD2d 414 [1st Dept 1998]; Kozmol v Law Firm of Allen L. Rothenberg, 241 AD2d 484, 485-486 [2d Dept 1997].)
Another consequence of Federal preemption, however, is that plaintiffs allegations must amount to a breach of the duty of fair representation claim against the union, under Federal law. Legal malpractice, grounded on negligence, is insufficient to support a breach of the duty of fair representation. “To support the latter claim, a union’s conduct must be arbitrary, discriminatory, or in bad faith.” (Waterman v Transport Workers’ Union Local 100, 8 F Supp 2d 363, 371 [SD NY 1998], affd 176 F3d 150, supra.) Because a union’s agents may not reasonably be held to a higher standard than their principal (id.; Montplaisir v Leighton, 875 F2d, supra, at 6-7), even if immunity did not apply, a union member may not sue the union attorney for acts amounting only to good faith, nondiscriminatory errors of judgment in processing a grievance. (Peterson v Kennedy, 771 F2d, supra, at 1254, 1259.)
A union member, such as plaintiff, is not without a remedy, if an attorney’s conduct in arbitration proceedings or other situations arising out of the collective bargaining agreement is in fact arbitrary, discriminatory, or in bad faith. The union member may sue the union for breach of the duty of fair representation. (Waterman v Transport Workers’ Union Local 100, 8 F Supp 2d, supra, at 371, affd 176 F3d 150; Arnold v Air Midwest, 100 F3d, supra, at 862; Peterson v Kennedy, 771 F2d, supra, at 1259.) The union collectively also may sue its attorney for malpractice or breach of contract and compensate any individual member out of the recovery for any damages he may have incurred. (Waterman v Transport Workers’ Union Local 100, 8 F Supp 2d, at 371, affd 176 F3d 150; Peterson v Kennedy, 771 F2d, at 1259.) Similarly, if the union attorney or another attorney agreed specifically to represent a union member directly as an individual client, not as a union member, the member could sue the attorney for malpractice or *199 breach of contract. (Arnold v Air Midwest, 100 F3d, at 862-863; Peterson v Kennedy, 771 F2d, at 1259.)
Here, even if the immunity bar were avoided and an attorney-client relationship recognized, plaintiffs allegations of negligence and malpractice do not support a cognizable claim against defendant, who cannot be held to a higher standard than the principal, the union, for whom the attorney acted. Although neither the immunity bar nor the requirement for an attorney-client relationship would apply to a claim for breach of the union’s duty of fair representation, no such claim may be read into plaintiffs complaint. (Tantillo v McDonald, 223 AD2d 168, 173 [1st Dept 1996].) Even if the claim were pleaded, it would be barred by the applicable six-month Statute of Limitations. (29 USC § 160 [b]; DelCostello v International Bhd. of Teamsters, 462 US 151, 169-172 [1983]; Tantillo v McDonald, 223 AD2d, at 173.)
VII. Conclusion
Federal law preempts plaintiffs claims for legal malpractice, misrepresentation, and fraud under State law, even if color-able. Defendant was legal counsel hired by a union to represent plaintiff in grievance proceedings pursuant to a collective bargaining agreement. In such cases, counsel enjoys unqualified immunity from personal liability for malpractice and related misconduct. Therefore the court grants summary judgment dismissing the complaint.